ANTHONY R. CERVINO et al., Respondents, v SHIRLEY A. KONSKER, Appellant, et al., Defendant.

Second Department, January 24, 1983

APPEARANCES OF COUNSEL

*Richard S. Bernstein* (*Matthew Cohen* of counsel), for appellant.

*Julian J. Bailey* for respondents.

OPINION OF THE COURT

*Per Curiam.*

The question in this case is whether a default judgment for $29,423.17 rendered in favor of the plaintiffs against defendant Shirley A. Konsker should stand. For the reasons set forth below our answer is "No".

The action arises out of a contract for the sale of a house. On September 21, 1978 defendant Shirley Konsker signed a real estate contract to sell her house to the plaintiffs, Anthony R. Cervino and Phyllis E. Cervino. The Cervinos

were represented by Richard T. Lombard, Esq., and Mrs. Konsker was represented by Martin Odorisio, Esq. The purchase price was $64,000. According to the contract the down payment of $6,400 was "to be held in escrow by seller's attorney until closing" and Mrs. Cervino drew a check for said sum directly to Martin F. Odorisio, as attorney. The contract called for a closing date of November 1, 1978. Prior to November 1, 1978 the plaintiffs obtained a $48,000 mortgage commitment from Citibank at the interest rate of 9% per annum. However, the closing was adjourned because there were outstanding violations on the property. Following the adjournment, the plaintiffs obtained another mortgage commitment for $48,000, this time from the Manhattan Savings Bank at the interest rate of 8½% per annum. This commitment was to expire as of May 2, 1979.

In the meantime, on December 6, 1978, Mr. Odorisio was convicted of the crime of conspiracy in the second degree, a class E felony, which resulted in his no longer being privileged to practice law. Two days later, Odorisio apparently deposited the escrow check in his own bank account and withdrew the entire sum. He did not advise Mrs. Konsker of his conviction but continued to "represent" her in the sale of her house.

On March 8, 1979 counsel for the Cervinos wrote a letter to Mr. Odorisio calling for a closing before May 1, 1979, the last day on which the mortgage commitment would be extant. No closing date was fixed, as a result of which the 8½% mortgage commitment lapsed. Thereafter, on May 2, 1979 counsel for the Cervinos wrote another letter to Mr. Odorisio, this time sending a carbon copy to Mrs. Konsker, demanding a return of the $6,400 down payment which was being held by Odorisio as escrow agent. Mr. Odorisio did not return the down payment and a summons and complaint were served on Mrs. Konsker and Mr. Odorisio on or about July 26, 1979 seeking damages from both Konsker and Odorisio. About three weeks earlier, namely, on July 2, 1979, this court had ordered Mr. Odorisio's name struck from the roll of attorneys and counselors at law (*Matter of Odorisio*, 68 AD2d 554).

Shortly after receiving the summons and complaint defendant Konsker retained the services of the law firm of Kadanoff & Haussman to represent her in the matter. Mrs. Konsker was directed to that firm by defendant Odorisio.

The complaint in the action contained three causes of action. In the first cause of action the plaintiffs sought to recover the return of their down payment of $6,400 with interest from September 21, 1978 and the sum of $852.40 representing expenses for a title search, violation search, termite inspection and reasonable attorney's fees. In the second cause of action the plaintiffs sought to recover $41,000 for excess interest payments alleging that they "can no longer obtain a mortgage commitment for less than the now prevailing rate of 9¾% on a $48,000.00 amount for a period of thirty years" and that the difference in interest payments between such mortgage and the one for 8½%, which lapsed because Mrs. Konsker did not close, amounted to $41,000. In the third cause of action the plaintiffs, alternatively, demanded that the property as represented in the contract be conveyed with a reduction in the purchase price of $41,852.40 to compensate them for excess interest costs incurred due to Konsker's breach of contract.

No answer was served and on September 21, 1979 an order was entered severing the causes of action against defendant Odorisio and granting the plaintiffs an inquest against defendant Konsker. Just prior to the inquest Konsker appeared in the action by the firm of Kadanoff & Haussman, whereupon the plaintiffs permitted the interposition of an answer. On or about December 14, 1979 defendants' answer was served.

After the defendants failed to appear for depositions noticed on January 7, 1980 the plaintiffs moved to compel examinations before trial and for an order directing defendant Odorisio to pay the escrow moneys held by him to the court pending determination of the action. The unopposed motion was granted by order dated January 31, 1980. As a result either or both of the defendants were directed to deposit the money within 10 days of service of a copy of the order and all parties were directed to appear for examinations before trial at the courthouse on March 3, 1980. On

March 17, 1980, after the defendants failed to comply with that order, the plaintiffs moved for an order striking the answer. The motion was granted unless Odorisio deposited the $6,400 in court within 10 days after service of a copy of the court's order and defendants appeared for their depositions on a date certain. The defendants again failed to comply with the court's order.

By motion dated June 27, 1980 the plaintiffs moved for an inquest assessing damages upon the striking of the defendants' pleadings. By cross motion dated July 16, 1980 the firm of Kadanoff & Haussman asked to be relieved from representing defendant Odorisio. The motion was granted, the cross motion was denied, and an inquest was held on November 14, 1980. On February 26, 1981 a judgment was entered against defendant Konsker in the amount of $29,423.17 and the action against codefendant Odorisio was withdrawn.

Thereafter, on November 10, 1981 Konsker moved, *inter alia,* to vacate the judgment. This appeal emanates from Special Term's denial of that branch of the motion.

It is settled that in order to vacate a default judgment a defendant must demonstrate a reasonable excuse for the default and make a prima facie showing of legal merit. It is equally settled that law office failure, as a matter of law, is an insufficient excuse for the purpose of supporting a motion to vacate a default judgment (see *Barasch v Micucci,* 49 NY2d 594). There is little doubt that this case represents a clear example of law office failure. That being so, we are of the view that Special Term did not err when it concluded that "the excuse offered by movant merely constitutes 'law office failure' and is not acceptable". Nevertheless, we are convinced that the judgment, as entered, may not stand. Although the conduct of Konsker's representatives in this action does not merit opening the default, there can be no doubt that the amount awarded for damages included in the judgment was grossly excessive.

As noted above, judgment was entered against Konsker in the amount of $29,423.17. This included an award of $15,098 for damages incurred for loss of an 8½% mortgage interest rate although the pleadings evince no claim that

Mrs. Konsker acted in bad faith or willful disregard of the contract (see *Bulkley v Rouken Glen, Inc.*, 222 App Div 570, affd 248 NY 647; *Pumpelly v Phelps,* 40 NY 59; *Laba v Carey,* 36 AD2d 823; *Mokar Props. Corp. v Hall,* 6 AD2d 536). Included in the judgment is $6,951.26, representing the return by Konsker of the down payment with interest even though such down payment had been deposited and held in escrow by Odorisio, rather than Konsker, pursuant to the contract (cf. *S.E.S. Importers v Pappalardo,* 79 AD2d 653, revd on other grounds 53 NY2d 455; *Asher v Herman,* 49 Misc 2d 475). The judgment also included an award for attorney's fees of $400 for legal services rendered with respect to the real estate contract and $6,000 for legal services rendered in the instant action plus $102.27 interest on the $6,000, even though such fees were not provided for in the contract of sale or by statute and there is no basis in the record for concluding that the litigation was rendered necessary by maliciousness or bad faith on the part of Mrs. Konsker (see 24 Carmody-Wait 2d, NY Prac, § 148.87; 7 NY Jur 2d, Attorneys at Law, § 122). Finally, the judgment includes $117 for the building inspection report, $30 for the termite inspection report, $65 which represents a cancellation on the title search, $75 for a violation inspection, $85 for a survey, plus interest in the amount of $84.64 on those five items and on the counsel fee of $400 noted above. Some of these latter items appear to be the only ones clearly authorized under the agreement in this case.

It has long been held that courts have inherent power beyond that which is contained in the CPLR or its predecessor statutes to open defaults (*Ladd v Stevenson,* 112 NY 325, 332) and where the amount awarded on a default judgment has been perceived as excessive the courts have exercised their inherent power to modify or reduce the amount (see *Midnight Ears v Clear-Vu Packaging,* 81 AD2d 907; *New York Annual Conference of United Methodist Church v Preusch,* 51 AD2d 711; *Oppenheim v Melnick,* 34 AD2d 784; *Monette v Bonsall,* 29 AD2d 839; see, also, 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.12).

We believe this to be a case calling for our intervention. If we were to let this judgment stand it would be tanta-

mount to granting the plaintiffs an "open season" at the expense of defendant Konsker. Consequently, in the interest of justice, we deem it proper that the issue of damages be assessed at a hearing at which defendant Konsker may defend herself on that issue.

Accordingly, the order appealed from should be modified by granting defendant Konsker's motion to the extent of opening the default to permit a reassessment of damages.

BRACKEN, J. P., NIEHOFF, RUBIN and BOYERS, JJ., concur.

Order of the Supreme Court, Queens County, dated January 25, 1982, modified, on the law and in the interest of justice, by granting defendant Konsker's motion insofar as the default judgment is opened to the extent of directing a reassessment of damages. As so modified, order affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith. The judgment shall remain on the record in the interim.